IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**STEPHANIE LORRAINE BACA,**

       **Plaintiff,**

    **vs.**                             **13cv224 MCA/RHS**

**CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,**

       **Defendant.**


## MAGISTRATE JUDGE'S ANALYSIS AND PROPOSED DISPOSITION

THIS MATTER comes before the Court on Plaintiff Stephanie Lorraine Baca's Motion to Reverse or Remand for Rehearing (Doc. 19). The Court considered the Defendant's Response (Doc. 20), Plaintiff's Reply (Doc. 22), and the supporting documentation, and proposes that Plaintiff's Motion be denied.

### CASE HISTORY

Mrs. Baca asserts that she became disabled due to visual impairments (Doc. 11-9 at 6). She filed her claim for social security disability benefits in April 2009 (Doc. 11-9 at 2). An Administrative Law Judge (ALJ) held a hearing on June 7, 2011, at which Mrs. Baca was represented by counsel (Doc. 11-5 at 21). The ALJ afforded counsel the opportunity to question Mrs. Baca (Doc. 11-5 at 33). On July 28, 2011, the ALJ issued a written decision that Mrs. Baca was not disabled (Doc. 11-5 at 7). Mrs. Baca appealed to the Social Security Administration's Appeals Council, which declined review on January 30, 2013 (Doc. 11-3 at 2). Mrs. Baca filed in this Court on March 8, 2013 (Doc. 1) for review of the ALJ's decision.

**ISSUES FOR REVIEW**

This Court reviews the ALJ's decision-making process.  The ALJ is required to review Mrs. Baca's case in a sequential five-step process to determine if she is disabled.  20 C.F.R. § 404.1520.  At the first step of the analysis, the ALJ determined that Mrs. Baca is not engaged in "substantial gainful activity," 20 C.F.R. § 416.971 (Doc. 11-5 at 9), which was a finding in the claimant's favor and therefore not discussed here.  In the second step, the ALJ considered whether Mrs. Baca has a severe medical impairment (20 C.F.R. § 416.920(c)) and found that Mrs. Baca does have blindness in her right eye and migraines (Doc. 11-5 at 9).  Mrs. Baca argues that the ALJ erred at step two by not finding her depression to be severe (Doc. 19 at 3).  For step three, the ALJ concluded that Mrs. Baca does not have an impairment that meets or medically equals one of the listed impairments (Doc. 11-5 at 10).  While this conclusion is adverse to Mrs. Baca, she does not argue that error occurred, so it is not addressed here.

Prior to step four, the ALJ reviewed Mrs. Baca's residual functional capacity and determined that Mrs. Baca had the

> residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid exposure to hazardous conditions; and she has no peripheral vision on the right eye and no depth perception.

(Doc. 11-5 at 11).  Mrs. Baca alleges that the ALJ erred by failing to include non-severe impairments in the residual functional capacity assessment and by failing to include limitations from her migraines (Doc. 19 at 7).  Additionally, Mrs. Baca argues that the ALJ failed to develop the record regarding her non-exertional impairments of depression, migraines and monocular vision (Doc. 19 at 10).  Mrs. Baca points to additional information that was not considered by the Appeals Council, such as her diagnosis of Hashimoto's disease and fibromyalgia, which could have affected the analysis regarding her residual functional capacity (Doc. 19 at 13).

At the fourth step, the ALJ considered whether, in light of Mrs. Baca's residual functional capacity, Mrs. Baca could still perform her past relevant work (Doc. 11-5 at 15).  The ALJ determined that the claimant could perform past relevant work as a general clerk and a data entry clerk (Doc. 15-3 at 19).  Mrs. Baca asserts that the ALJ erred by delegating the ALJ's responsibility to the vocational expert (Doc. 19 at 17).

At step five, the ALJ determined whether Mrs. Baca could perform jobs in the national economy, given her age, education, work experience, and residual functional capacity assessment.  In part based on the Vocational Expert's testimony, the ALJ concluded that there were at least two jobs (general clerk or data entry clerk) that Mrs. Baca could perform and therefore she was not considered disabled (Doc. 11-5 at 15).  Mrs. Baca does not allege that the ALJ made any specific error at step five (Doc. 19), so it is not analyzed here.

## STANDARD OF REVIEW

The Court's review of the administrative decision is both factual and legal.  The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1259 (10th Cir. 2005).  Substantial evidence is less than a preponderance, Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

## ANALYSIS

### The ALJ Did Not Commit Reversible Error By Not Finding that the Claimant's Depression was Severe (Step Two)

In the second step, the ALJ considered whether Mrs. Baca has a severe medical impairment (20 C.F.R. § 416.920(c)) and found that Mrs. Baca does have blindness in her right eye and migraines (Doc. 11-5 at 9). Mrs. Baca argues that the ALJ erred at step two by not also finding her depression to be a severe impairment (Doc. 19 at 3). However, the ALJ's failure to find additional severe impairments does not affect the ultimate determination regarding disability. "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Accordingly, the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." Dray v. Astrue, 353 Fed. Appx. 147, 149 (10th Cir. 2009). Consistent with the Tenth Circuit case law, the Court does not find any reason to remand with regard to step two.

### The ALJ Did Not Err Regarding Developing the Record

Mrs. Baca argues that the ALJ failed to develop the record regarding her non-exertional impairment of depression (Doc. 19 at 10). At the hearing, counsel requested that the ALJ consider ordering a psychological consultative exam to assess Mrs. Baca's depression and mood disorder (Doc. 11-5 at 26). The ALJ denied this request because the ALJ found the medical records from Sandia Crest Mental Health to be sufficient to evaluate depression (Doc. 11-5 at 10). Mrs. Baca points to the conundrum of her situation by citing a district court case from 1985:

> Although faced with enough evidence to warrant questioning the existence and extent of psychosomatic illness, the ALJ put Holloway in a Catch-22 position: she was not allowed a consultative mental examination because she had not had psychiatric help in the past. Not only did the ALJ ignore the evidence from Holloway, Dr. Birch and Dr. Brown that the claimant was in need of psychiatric care, but the ALJ further failed to consider that Holloway could not afford to pay

for her own psychiatric evaluations.

Holloway v. Heckler, 607 F. Supp. 71, 73 (D. Kan. 1985).  However, unlike the Holloway case,

Mrs. Baca has not pointed to any evidence from medical providers that the ALJ failed to

consider, or evidence that should have triggered a consultative examination.  As the Tenth

Circuit has clearly stated, "the starting place must be the presence of some objective evidence in

the record suggesting the existence of a condition which could have a material impact on the

disability decision requiring further investigation."  Hawkins v. Chater, 112 F. 3d 1162, 1167

(10th Cir. 2009).  Mrs. Baca does not make clear to the Court what objective evidence – as

compared to the claimant's subjective complaints – suggested a condition which had a material

impact on disability.  The Motion (Doc. 19 at 13) asserts that the consultative examination was

required to explain a diagnosis already contained in the record, Hawkins at 1166, but the Motion

does not mention which diagnosis, or from which medical provider, or why that part of the

record needed explanation in order for the ALJ to reach an informed decision.  Regulations exist

regarding when consultative examinations are required, and Mrs. Baca has not alleged that the

ALJ violated any of the regulations.  Therefore, there is not any reason to remand to develop the

record.

### The ALJ Did Not Commit Reversible Error at the Residual Functional Capacity Step

The ALJ reviewed Mrs. Baca's residual functional capacity and determined that Mrs.

Baca had the

> residual functional capacity to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: she must avoid exposure to
> hazardous conditions; and she has no peripheral vision on the right eye and no
> depth perception.

(Doc. 11-5 at 11).  Mrs. Baca alleges that the ALJ erred by failing to include non-severe

impairments, such as her depression, in the residual functional capacity assessment, and by failing to include limitations from her migraines and right eye blindness (Doc. 19 at 7).

As for depression, it does not appear that the ALJ committed any error by not evaluating depression's effect on Mrs. Baca's residual functional capacity.  Mrs. Baca has not pointed to objective medical evidence in the record where any treating provider found that depression limited her capacity, so there was nothing to consider besides subjective complaints.  It is unclear exactly how Mrs. Baca believes depression limited her ability to work.   The Court's own review of the medical records (including Doc. 11-20 at 3-28) did not reveal any functional limitation that the ALJ missed.

With regard to migraines, the objective medical evidence also fails to support that Mrs. Baca had functional limitations.  It is not in dispute that Mrs. Baca had migraines, reported she had migraines, and was diagnosed with migraines, but Mrs. Baca is not able to point to any functional limitation based on objective medical evidence in the record that the ALJ should have considered.   The Court's own review of the medical records regarding migraines did not yield functional limitations.

The ALJ dedicated approximately eight paragraphs over four pages to Mrs. Baca's monocular vision and imposed limitations on her residual functional capacity.  The ALJ's review included summaries from Arup Das, M.D., Ph.D; Paul E. Hepner, Jr., M.D.; Michael S. Seligson, M.D.; and Charles O. Ogunro, M.D. (Doc. 11-5 at 11-14).  As a result, the ALJ limited Mrs. Baca to avoidance of hazardous conditions and noted that she did not have any peripheral vision in the right eye and she did not have any depth perception (Doc. 11-5 at 11).  Mrs. Baca has not pointed the Court to any functional limitation in the objective medical evidence that the ALJ failed to consider.  In fact, the ALJ's decision demonstrates that it was based on substantial

evidence.  The Court does not find any reason to remand due to the ALJ's residual functional capacity determination.

**The ALJ Did Not Delegate Responsibility to the Vocational Expert (Step Four)**

At the fourth step, the ALJ considered whether, in light of Mrs. Baca's residual functional capacity, Mrs. Baca could still perform her past relevant work (Doc. 11-5 at 15).  Mrs. Baca asserts that the ALJ erred by delegating the ALJ's responsibility to the Vocational Expert (Doc. 19 at 17).

The ALJ recited classifications from the Dictionary of Occupational Titles, noting that Mrs. Baca's past relevant work as a general clerk is considered light and semi-skilled and her job as data entry clerk is considered sedentary and semi-skilled (Doc. 11-5 at 15).  This analysis is often referred to as Winfrey's phase two, from Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996).  "While the ALJ did not use the phrase 'I find' in connection with his conclusion in the second phase of the analysis, the form of words should not obscure the substance of what the ALJ actually did."  Doyal v. Barnhart, 331 F.3d 758 (10th Cir.  2003).  In this case, the undersigned finds that the ALJ did determine the mental and physical demands of claimant's past work, even if the ALJ relied on the Vocational Expert and the Dictionary of Occupational Titles rather than additionally analyzing other information.  Mrs. Baca's Motion (Doc. 19 at 17) does not point to any specific finding that the ALJ could or should have made with regard to Mrs. Baca's work as a general clerk or data entry clerk that would have affected the Winfrey analysis.

Next, the ALJ compared Mrs. Baca's residual functional capacity to the demands of her past relevant work, and the ALJ determined that the claimant could perform past relevant work as a general clerk and a data entry clerk (Doc. 11-5 at 15), which is known as Winfrey phase three.  The Court does not find any error that occurred at this phase.

**The Appeals Council Did Not Commit Reversible Error with Regard to New Evidence**

Mrs. Baca points to additional information that she claims was not considered by the Appeals Council which she argues could have affected the analysis regarding her residual functional capacity (Doc. 19 at 13). Specifically, she argues that certain documentary evidence was not considered by the Appeals Council and her new diagnosis of Hashimoto's disease and fibromyalgia were not properly reviewed.

As for the documentary evidence, Mrs. Baca argues that the Appeals Council did not state that it considered the additional evidence nor did the Appeals Council return the evidence to Mrs. Baca, therefore the matter should be remanded (Doc. 19 at 13). The Social Security Administration counters by citing the page where the Appeals Council recited the evidence it considered (Doc. 11-3 at 3). Mrs. Baca does not argue with this in her reply (Doc. 22 at 3), so the Court concludes that Mrs. Baca concedes that the Appeals Council did consider the information it listed. Therefore, there is not any reason to remand this issue.

Mrs. Baca also argues that the Appeals Council did not consider her new diagnoses of Hashimoto's disease and fibromyalgia, and asserts that these diagnoses would have been objective evidence from treating sources to support Mrs. Baca's subjective complaints (Doc. 19 at 16). The Appeals Council must "consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal quotations and citations omitted). First, it appears undisputed that the additional evidence is new. Second, the Social Security Administration argues that the evidence is not material to the disability determination because the diagnoses are not linked to a work-related limitation. Mrs. Baca's briefing to this Court does not connect these diagnoses to her residual functional capacity.

Third, the timing of the diagnoses do not favor Mrs. Baca.  The ALJ issued a decision in July

2011 (Doc. 11-5 at 15).  Mrs. Baca was diagnosed with Hashimoto's disease in January 2012

(Doc. 19 at 14) and diagnosed with fibromyalgia in September 2012 (Doc. 19 at 15) and Mrs.

Baca does not provide citation to the Court asserting that the medical evidence shows that these

diagnoses overlapped the time period for which the ALJ made a decision.  Thus, there is not any

reason to remand for the Appeals Council to re-review.


        In conclusion, the Social Security Administration's decision that Mrs. Baca is not

disabled is supported by substantial evidence in the administrative record and the Court is

persuaded that the ALJ did not commit reversible error.  Therefore, the Court recommends that

Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 24) be denied

and that the case be dismissed with prejudice.

        Within fourteen (14) days after a party is served with a copy of these proposed findings

and recommendations that party may, pursuant 28 U.S.C. § 636(b)(1), file written objections to

these proposed findings and recommended disposition.  A party must file any objections with the

clerk of the district court within the fourteen (14) day period allowed if that party would like to

have appellate review of the proposed findings and recommendations.  If objections are not filed,

appellate review will not be allowed.


                                    _Robeet Hayes Scott_
                                    ROBERT HAYES SCOTT
                                    United States Magistrate Judge