IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**STEPHANIE LORRAINE BACA,**

    Plaintiff,

v.                                    No.  13-CV-224 MCA/RHS

**CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,**

    Defendant.

**MEMORANDUM OPINION AND ORDER**

This is an appeal pursuant to 42 U.S.C. § 405(g) from a decision of the Commissioner of the Social Security Administration.  The case is before the Court on *Plaintiff's Motion to Reverse and Remand for Rehearing*.  [Doc. 19]  The Magistrate Judge recommends that the Court uphold the Commissioner's decision and dismiss this case with prejudice.  [Doc. 24, p. 9]  After a *de novo* review of the portions of the Magistrate Judge's Analysis and Proposed Disposition to which Plaintiff has objected, U.S.C. § 636(b)(1)(c), the Court adopts in part and rejects in part the *Magistrate Judge's Analysis and Proposed Disposition*.  [Doc. 24]  For the reasons set out below, the Court grants Plaintiff's *Motion to Reverse and Remand for Rehearing*. [Doc. 19]

**I.**     **BACKGROUND AND ISSUES**

Plaintiff filed an application for disability benefits in April of 2009.  [Doc. 11-5, p.7]  In due course, Plaintiff's amended claim went to a hearing before an Administrative Law Judge (ALJ), based on alleged impairments of blindness in the right eye, migraines

1

and major depressive disorder with an onset date of April 24, 2009. [Doc. 11-5, pp. 7, 9] The, ALJ determined that: 1) Plaintiff had not engaged in substantial gainful activity since April 24, 2009; 2) Plaintiff has severe impairments of blindness in the right eye and migraines; 3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in the Social Security Administration's regulations; 4) Plaintiff has a residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitation of needing to avoiding exposure to hazardous conditions and that Plaintiff "has no peripheral vision on the right eye and no depth perception[;]" 5) Plaintiff is capable of performing her past work of general clerk and data entry clerk; and 6) Plaintiff is not disabled. [Doc. 11-5, pp. 9 to 15]  Plaintiff submitted additional evidence to the Social Security Administration's Appeals Council, which denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. [Doc. 11-3, pp. 2-5] *See Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006) ("Because the Appeals Council denied review, the last ALJ's decision is the Commissioner's final decision for purposes of this appeal.").

Plaintiff appeals, arguing that the administrative decision was not supported by substantial evidence and the Commissioner failed to apply correct legal standards, and thus Plaintiff moves to reverse and remand her claim for rehearing. [Doc. 1, Doc. 19] The Magistrate Judge filed the *Magistrate Judge's Analysis and Proposed Disposition*, proposing that the Court deny Plaintiff's request to remand. [Doc. 24]  Plaintiff has objected to the Magistrate Judge's proposed disposition. [Doc. 25]  In her Objections,

Plaintiff does not take issue with the Magistrate Judge's determination that the ALJ did not err in determining that her depression was not a severe disability. [Doc. 25] Accordingly, the Court adopts the Magistrate Judge's analysis and conclusion that Plaintiff's depression is not a severe disability under step two of the five-step analysis. [Doc. 24, p. 4] Plaintiff objects on the grounds that the ALJ erred by: 1) failing to order a consultative exam and thus failing to adequately develop the record; 2) incorrectly determining her residual functioning capacity (RFC); and 3) delegating her authority to the Vocational Expert (VE). Plaintiff also argues that the Commission erred in failing to consider new evidence. [Doc. 25]

## II.    ANALYSIS

### A.    Standard of Review and the Five-Step Sequential Analysis

The Court's reviews "the agency's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. This court may neither reweigh the evidence nor substitute our judgment for that of the agency.

*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (internal quotation marks and citation omitted).

The Commissioner has adopted by regulations a five-step sequential process for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920.

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a substantial gainful activity. At step two, the SSA will find nondisability unless the claimant shows that he has a severe impairment, defined as any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (internal brackets, quotation marks, citations and footnotes omitted). Step four of the sequential analysis, at issue here, is further broken down into three phases: 1) determining the claimant's current physical-mental RFC; 2) determining the physical and mental demands of the claimant's past relevant work; and 3) determining whether the claimant's current RFC permits her to meet the demands of her past relevant work. *Winfrey v. Chatter*, 92 F.3d 1017, 1023 (10th Cir. 1996).

### B. Consultative Exam

Even though the claimant has the burden to prove disability,

> [t]he ALJ has a basic obligation . . . to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and [learns] the claimant's own version of those facts.

*Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (internal quotation marks and citations omitted). One means of developing the record, if insufficient, is to order a consultative examination, which is "a physical or mental examination" ordered and paid for by the Administration. 20 C.F.R. §§ 404.1519, 404.1519a; *see also Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997).

> [T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

*Hawkins*, 113 F.3d at 1167. The Commissioner has broad latitude in deciding whether to order a consultative exam. *Id.* at 1166. However, "where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Id.* (internal citations omitted); *see also* 20 C.F.R. § 404.1519a (stating the situations requiring a consultative exam, including when "[t]he additional evidence needed is not contained in the records of your medical sources").

Plaintiff requested a consultative exam below "to assess what limitations Ms. Baca has from her depression, anxiety, as well as the migraines[.]" [Doc. 11-5, p. 45] The ALJ concluded that a consultative examination was not necessary, stating: "I have considered the request by the claimant's attorney for a psychological consultative examination to assess the claimant's major depression; however, I find the medical evidence from Sandia Crest Mental Health (Exhibit 17F) is sufficient to evaluate the

5

claimant's major depression." [Doc. 11-5, p. 10] At step two, the ALJ concluded that Plaintiff had a severe impairment from migraines, but at step four the ALJ concluded Plaintiff had no impairment from the migraines.[1] The ALJ further concluded that Plaintiff did not suffer from a severe impairment from depression and, at step four, found no impairment from her depression.

The Magistrate Judge proposes affirming the Commissioner's decision because Plaintiff did not point to any evidence which should have triggered a consultative examination. [Doc. 24, p. 5] Plaintiff objects, citing, *inter alia*, evidence in the record that Plaintiff had been diagnosed with and prescribed medication for depression and migraines. [Doc. 25, pp. 1-2] The Court concludes that Plaintiff created a sufficient record to trigger a consultative exam. *See Hawkins*, 113 F.3d at 1169 (holding that the ALJ erred in not ordering a consultative examination where the record contained objective evidence pointing to, but not establishing, a possible severe disability).

In this case, a consultative exam should have been ordered for several reasons. In concluding that no consultative examination was necessary, the ALJ did not make an express determination that evidence in the record was sufficient to determine Plaintiff's limitation from migraines, but only that the record evidence was sufficient to evaluate

---

[1] "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *See Franklin v. Astrue*, 2012 WL 1059995, *3 (D. Colo. 2012) (internal quotation marks and citation omitted)). Even so, "concluding that an impairment is severe at step two is relevant to plaintiff's functional capacity because only those impairments that significantly limit a plaintiff's ability to do basic work activities qualify as 'severe.'" *Id.* at *4.

6

Plaintiff's claim of depression. [Doc. 11-5, p. 10] However, given the evidence in the record, the ALJ should have considered whether a consultative examination was necessary with respect to both Plaintiff's depression and her migraines. *See Hawkins*, 113 F.3d at 1164-68 (considering separately the plaintiff's claims that a consultative exam should have been ordered as to the two separate disabilities claimed by the plaintiff).

Additionally, the ALJ reached her decision without considering pertinent evidence. [Doc. 11-5, pp. 11 to 13] The ALJ's decision indicates that Plaintiff first reported having migraines on August 23, 2010. [Doc. 11-5, p. 12] However, consistent with Plaintiff's claims that her migraines began after her first eye surgery, a medical record indicates that one week after surgery on her right eye, Plaintiff reported to her eye doctor that "pain [right eye] comes [and] goes looking to left [illegible] hurts, pulling sensation." [Doc. 11-12, p. 6] Then Plaintiff reported pain and itching behind her right eye to her eye doctor in August of 2008. [Doc. 11-12, p. 2] In June of 2009 she reported to her eye doctor that she had frequent headaches, at least once a day, and that "Tylenol helps but still very light sensitive." [Doc. 11-11, p. 5] Then from August, 2010 to May, 2011 Plaintiff saw various practitioners and was prescribed various medications for migraines. [Doc. 11-20, p. 19; Doc. 11-20, 39] Finally, in May of 2011, Plaintiff was evaluated by Presbyterian Neurology for "right periorbital headache, which frequently affects the right hemicranium." [Doc. 11-20, p. 37] Plaintiff reported that "[h]eadache never affects the left hemicranium. The headache occurs daily or every other day. Headache is associated with nausea, photophobia, phonophobia, and it is often associated

7

with disequilibrium. Headaches began in 2008 after eye surgery." [Doc. 11-20, p. 37] The doctor stated "This patient appears to be suffering from migraine. The neurological examination was normal. Blindness at the right eye was noted." [Doc. 11-20, p. 37] Her migraine medication was changed again. [Doc. 11-20, p. 37] The same month, Plaintiff had an MRI performed, and, while the record lacks a medical expert's interpretation of the MRI, the ALJ concluded that the MRI impressions were "basically normal." [Doc. 11-20, pp. 39-40; Doc. 11-5, p. 14]

The ALJ decision does not indicate that Plaintiff's complaints from 2008 or 2009 were considered in determining Plaintiff's credibility or the "intensity, persistence and limiting effects" of Plaintiff's migraines. [Doc. 11-5, p. 11-12] "Findings as to credibility should be closely and affirmatively linked to substantial evidence." *Winfrey*, 92 F.3d at 1020. Having failed to consider all pertinent medical evidence when making a determination as to Plaintiff's credibility, the ALJ's decision is not based on substantial evidence. *See id.* at 1020-21 (concluding that the ALJ's credibility determination was not supported by substantial evidence).

Plaintiff testified that she wakes up with a headache "every day, every other day," and that three or four times a week "they'll turn into a real, really bad migraine to where I can't handle the pressure in back of my eye, so I have to go into the room and lay down and just stay in there for hours because I cannot handle the light and the noise or anything." [Doc. 11-5, pp. 29-30] She testified that she gets nauseous from the migraines and has vomited from them. [Doc. 11-5, p. 41] She testified that there are times when her migraine medication does not work and her doctors were still changing

her medications. [Doc. 11-5, p. 29-30] She testified that she can't watch television, read or be on a computer for very long without her vision getting blurry and getting a migraine. [Doc. 11-5, p. 32] Finally, she testified that her husband goes to the store because to see labels or prices she has to "put my face in there," which she says makes her get "bad migraines, because it's just like right up on me like that, so – and I'm straining my left eye, they said, a lot when I do that." [Doc. 11-5, pp. 38-39]

>Furthermore, the ALJ stated:

>I find there are inconsistencies in the claimant's testimony and statements throughout the record when compared to the medical evidence of record. Subjective allegations that the claimant experiences severe migraine headaches and significant limitations with her daily activities of living due to her vision, by itself, cannot support a finding of disability. Objective evidence must establish an impairment that could be expected to produce the alleged pain (or other symptoms).

[Doc. 11-5, pp. 13-14] In social security disability cases, "objective evidence" is a term of art. *Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987) (stating that objective evidence includes physiological and psychological evidence and that "psychological abnormality shown by medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques must be given as much consideration as similarly demonstrated evidence of physical impairments" (internal quotation marks and citations omitted)).

>An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence

required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

The case of *Franklin v. Astrue*, 2012 WL 1059995, *4 (D. Colo. 2012) is instructive in considering the meaning of "objective evidence" in claims of disability from migraines. *Id.* (collecting cases addressing the lack of "objective" evidence, i.e., tests or lab results, concerning migraines and cases discussing medically acceptable diagnostic techniques for migraines). In *Franklin*, the Colorado District Court reversed the ALJ conclusion that the claimant's "migraines imposed no limitations . . . based in part on the absence of any 'objective' evidence of migraines." *Id. Franklin* points out that "[d]octors diagnose migraines through medical signs and symptoms such as nausea, vomiting, photophobia, sensitivity to sound[.]" *Id.* (internal quotation marks and citation omitted).

With regard to the severity of pain from a medical condition, once diagnosed, "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Luna*, 834 F.2d at 165. "Rather, the decision maker must consider all the evidence presented that could reasonably produce the pain alleged once a claimant demonstrates a pain-causing impairment." *Id. Luna* lists factors which an ALJ can consider in making such a determination, including the claimant's persistent attempts to find relief for his or her

pain, the claimant's "willingness to try any treatment prescribed, . . . regular contact with a doctor, and the possibility that psychological disorders combine with physical problems." *Id.* at 165-66. Here, the record does not indicate that the ALJ considered Plaintiff's repeated attempts to get relief from her headaches, her willingness to try a variety of medications for migraines, and the possible combination of her depression with her migraines. Moreover, contrary to *Luna*, and instead of complying with her duty to develop the record, the ALJ appeared to require some sort of "objective evidence" to corroborate Plaintiff's complaints of the severity of her migraines, on top of the objective evidence in the record establishing that Plaintiff suffers from migraines. *Id.* at 165.

The ALJ referred to four types of evidence in the record as inconsistent with Plaintiff's claims of limitations, however, the usefulness of the particular evidence which the ALJ relied upon is limited and does not relieve the need for a consultative examination. First, the ALJ relied on a report by a field officer interviewer which stated that plaintiff was not observed to have difficulties "hearing; reading; breathing; understanding; coherency; concentrating; talking; answering; sitting; standing; walking; seeing; using his [*sic*] hands; and writing" and that "the claimant did not appear to have any discomfort at the time of the interview." [Doc. 11-5, p. 14] While consideration of this report was appropriate, the report cannot be substituted for that of a medical expert. *See Winfrey*, 92 F.3d at 1022 (holding that the ALJ "overstepped his bounds when he substituted his medical judgment for that of" a treating physician). Second, the ALJ relied on an occupational therapy report which indicated that Plaintiff could complete her "self-cares" and activities of daily living at an independent level. [Doc. 11-5, p. 14; Doc.

11

11-20, pp. 33-34] However, Plaintiff had sought occupation therapy not for her migraines or depression, which were only mentioned briefly if at all in the report,[2] and there is no suggestion that migraines or depression were part of the occupational therapist's consideration in determining whether Plaintiff could perform activities of daily living. Further the ALJ appears to disregard pertinent information in the report, as it in whole states:

> Current Functional Level: The patient is completing her ADLs and self-cares, and she completes her IADLs;[3] however, she as difficulty. She occasionally is falling secondary to tripping on the stairs. She is not able to see when she is trying to clean. She has difficulty with using the vacuum cleaner, sweeping and overall basic household activities.

[Doc. 11-20, p. 33] Moreover, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (internal brackets, quotation marks and citations omitted). Third, the ALJ relied on an MRI of the brain which "showed impressions that were basically normal showing no acute infarct, intracranial hemorrhage or mass lesions." [Doc. 11-5, p. 14] However,

---

[2] The report states "Pain: She currently is not having any pain secondary to taking medication. She stated that her most severe pain is 7/10 without medication, and this is in her right eye." [Doc. 11-20, p. 33] This appears to be a reference to Plaintiff's migraines.

[3] "ADLs" refer to activities of daily living and generally include activities such as grooming, hygiene, dressing and eating. "IADLs" refer to instrumental activities of daily living and include, for example, cooking, cleaning and shopping. *Bouton v. Astrue*, 2008 WL 627469, *4 (D. Kan. 2008); *Brannan v. Unified Sch. Dist. 211*, 2013 WL 120163, *4 (D. Kan. 2013).

> [W]hile there may not be a laboratory or blood test to confirm a migraine disorder, and it may be that radiologic studies do not always reveal an objectively-defined source of migraine pain, it is possible to present objective-like evidence to establish the severity of the claimed impairment such as the treating physician's personal observations of any physical manifestations of pain, chart notes reflecting ongoing attempts at treatment with medication(s), trips to the emergency room or hospital admissions for disabling migraine pain, a record of associated symptoms, or other similar evidence.

*Franklin*, 2012 WL 1059995, *4 (internal quotation marks and citation omitted). Finally, the ALJ relied on evidence in the record that Plaintiff's vision out of her left eye was not impaired. [Doc. 11-5, p. 14] However, this evidence is not disputed. All in all, while this evidence was pertinent to a whole record review, it did not alleviate the need for a consultative exam. *See Thompson*, 987 F.2d at 1490, 1492-93 (holding that the ALJ's determination that the claimant's complaints of pain were not credible was not supported by sufficient evidence and reversing for a consultative examination).

Where all of the evidence, and particularly the medical evidence, is inconclusive on the issue of whether a claimant is able to participate in substantial gainful activity, the ALJ has a duty to develop the record through a consultative examination. *Hawkins*, 113 F.3d at 1168 (pointing out that it is error to fail to develop a record where a disability determination might reasonably have been different had the record been developed); *see also Baca v. Dep't Health & Human Servs*., 5 F.3d 476, 480 (10th Cir. 1993) (holding it was erroneous for the Commissioner to fail to develop the record and to disregard the claimant's testimony of disabling pain); 20 C.F.R. 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on

your claim."). "It matters that the ALJ did not order a consultative examination . . . because the medical evidence in the record is inconclusive and does not provide substantial support for findings of [the claimant's] RFC level[.]" *Thompson*, 987 F.2d at 1492. The medical records do not offer sufficient insight into whether Plaintiff's migraines disable her or do not disable her. Instead, they establish that Plaintiff has been diagnosed with migraines and has been complaining about pain in or behind her right eye since July of 2008, and Plaintiff has been tried various treatments prescribed since 2010, without obtaining relief. Under these circumstances, the ALJ erred by not ordering a consultative examination. *See, e.g., Hawkins*, 113 F.3d at 1169 (holding that it was error to fail to order a consultative examination).

In addition to requesting a consultative examination based on migraines, Plaintiff requested that the ALJ order a consultative examination based on depression. [Doc. 11-5, p. 45] As Plaintiff has repeatedly pointed out, one of Plaintiff's therapists assigned Plaintiff a GAF score of 49. [Doc. 11-5, p. 25; Doc. 19, p. 4]

> The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." A GAF score of 51-60 indicates "moderate symptoms," such as flat affect, or "moderate difficulty in social or occupational functioning." A GAF score of 41-50 indicates "serious symptoms . . . or serious impairment in social, occupational, or school functioning," such as inability to keep a job.

*Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (internal brackets and citations omitted). Given this evidence, Plaintiff has produced evidence which meets her burden to "make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167. Moreover,

because Plaintiff's RFC must be determined based on all limitations she experiences, including those from severe and non-severe impairments, a consultative examination should consider whether Plaintiff's depression limits her ability to work when combined with her migraines and right-eye blindness. Finally, after the consultative examination(s) is conducted, the ALJ must reconsider steps four and five based on the whole record. Accordingly, the Court remands this matter to the Commission for a consultative exam(s) and for a rehearing.

### C. Plaintiff's Remaining Issues

Because the Court is remanding for a rehearing after a consultative examination, and because the ALJ will need to make a new determination of Plaintiff's RFC based on all of the evidence in the record after the consultative examination(s), the Court need not consider Plaintiff's remaining arguments.

### III. CONCLUSION

WHEREFORE, IT IS HEREBY ORDERED that this matter is remanded to the Social Security Administration for further proceedings consistent with this opinion.

IT IS SO ORDERED this 8th day of January, 2015 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court